UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

ROY WAYNE WARNER,                    )
                                     )
        *Plaintiff*,                 )
                                     )
v.                                   )        No. 4:13-cv-46-HSM-SKL
                                     )
COMMISSIONER OF SOCIAL SECURITY      )
                                     )
        *Defendant*.                 )

## REPORT AND RECOMMENDATION

Plaintiff Roy Wayne Warner ("Plaintiff") brought this action pursuant to 42 U.S.C. §

405(g) seeking a judgment reversing the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying Plaintiff's disability insurance benefits ("DIB") and

supplemental security income ("SSI"). Plaintiff moved for judgment on the pleadings [Doc. 12]

and filed a memorandum in support [Doc. 13]. Plaintiff alleges that the administrative law judge

("ALJ") erred by: (1) minimizing Plaintiff's severe back disorder; (2) minimizing Plaintiff's

severe mental impairments; (3) failing to properly evaluate and assess Plaintiff's credibility; (4)

making a residual functional capacity ("RFC") determination that was not consistent with the

medical evidence; and (5) failing to include a function-by-function assessment. Defendant

moved for summary judgment [Doc. 14] and filed a memorandum in support [Doc. 15]. For the

reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings

[Doc. 12] be **DENIED;** (2) the Commissioner's motion for summary judgment [Doc. 14] be

**GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

# I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI on April 1, 2009, alleging a disability beginning on October 31, 2007 (Transcript [Doc. 10] ("Tr.") 10, 115-25).   Plaintiff later amended his alleged onset date to December 16, 2009 (Tr. 10, 36).   Plaintiff's claim was denied initially and upon reconsideration (Tr. 59-62, 70-73).   The ALJ held a hearing on October 21, 2011, during which Plaintiff was represented by an attorney (Tr. 26).   The ALJ issued a decision on November 10, 2011, concluding Plaintiff was not disabled because he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 10-19).   The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3).   Plaintiff filed the instant action on July 3, 2013 [Doc. 1].

# II.    FACTUAL BACKGROUND

## A.    Education and Employment Background

Plaintiff has a seventh grade education (Tr. 28-29).   Plaintiff's past relevant work history includes work as a construction laborer, roofer, and work with both a vinyl and a gutter company (Tr. 31-33).   Also, Plaintiff formerly ran his own business, where he acted mainly as a supervisor (Tr. 30-32).   Plaintiff stated he worked for about one month in 2007 because he needed the money, but quit because he was carrying materials that were too heavy and his legs and back would "give out" (Tr. 33-34).   Most recently, in 2011 he worked cleaning up construction sites and instructing workers for an average of ten hours per week for six non-consecutive months. (Tr. 34-35).

### B. Medical Records

Only the portion of Plaintiff's medical records relevant to the parties' arguments will be addressed herein, but all relevant medical records have been reviewed by the Court.

### 1. Middle Tennessee Medical Center

On March 9, 2009, Plaintiff presented to Middle Tennessee Medical Center ("MTMC") with reports of severe back pain following a work injury (Tr. 236). His examination revealed normal range of motion, normal strength, and normal alignment, but with right, lateral tenderness (Tr. 237). Plaintiff reported exacerbating factors including movement, bending, standing, walking, and changing position (Tr. 236). He was diagnosed with low back pain and lumbar sprain and prescribed over-the-counter pain medication (Tr. 236-37). Plaintiff presented again to MTMC a few days later on March 12, 2009, describing his pain as moderate, but reporting a worsening in the course/duration of symptoms (Tr. 222). His examination again revealed normal range of motion, normal strength, and normal alignment, as well as no swelling or deformities (Tr. 224). The examination also revealed "paraspinal tenderness with spasm" (Tr. 224). Plaintiff reported exacerbating factors including movement, bending, standing, walking, sitting, and changing position (Tr. 222). He was diagnosed with low back pain and prescribed pain medication (Tr. 224-25).

On June 25, 2009, Plaintiff presented again to MTMC reporting a flare up in pain after sleeping in a hard bed (Tr. 210). He reported no injury, fall, or blunt trauma (Tr. 210). His examination revealed tenderness, but no swelling, or ecchymosis (Tr. 211). Plaintiff described his pain as moderate and reported movement and walking as exacerbating factors (Tr. 210). He was diagnosed with low back pain and prescribed pain medication (Tr. 211).

3

On Plaintiff's next visit to MTMC on December 16, 2009, he reported severe back pain after lifting in his home (Tr. 198). His examination revealed normal range of motion, normal strength, normal alignment, and no tenderness (Tr. 199). He was diagnosed with lumbar sprain and prescribed pain medication (Tr. 199).

On December 8, 2010, Plaintiff was admitted to MTMC for monitoring after an overdose following an altercation with his wife (Tr. 270-71). He was discharged two days later, on December 10, 2010 with a diagnosis of altered mental state, overdose, depression, and chronic back pain, among other diagnoses (Tr. 270). Plaintiff denied suicidal ideations or suicidal attempts (Tr. 271). MTMC found no need for inpatient psychiatric treatment (Tr. 271). Prior to this incident, Plaintiff's medical records at MTMC reveal no indication of mental illness (Tr. 197, 199, 209-11, 221, 223, 235).

## 2. Rutherford County Health Department

On July 7, 2009 and July 8, 2009, Plaintiff presented to the Rutherford County Health Department, reporting chronic back pain (Tr. 244). He was prescribed pain medication (Tr. 244).

## 3. Primary Care & Hope Clinic

On April 12, 2010, Plaintiff presented to the Primary Care and Hope Clinic ("PCHC") with reports of back pain and anxiety (Tr. 268-69). He was prescribed medication for pain and sleeplessness (Tr. 269). On May 12, 2010, Plaintiff presented with the same symptoms and stated he had been taking three Lortabs each day to manage his pain (Tr. 266). He was prescribed medication for pain and sleeplessness (Tr. 267). Plaintiff presented to PCHC again on June 14, 2010 with reports of back pain, anxiety, and depression (Tr. 264). He stated he had been under a lot of stress, which may have caused his sleeplessness (Tr. 264). The file notes

4

Plaintiff needed to be seen by a mental health professional for his stress and insomnia (Tr. 265). He was prescribed medication for pain (Tr. 265).

On July 13, 2010, Plaintiff presented and stated he injured his knee while jumping on a pogo stick (Tr. 261). He also stated he was upset about his wife being in intensive care (Tr. 261). He was prescribed medication for pain and anxiety (Tr. 262). He requested more pain medication, but the doctor denied his request, suggesting he go to a pain clinic for further pain management (Tr. 262).

Plaintiff presented again to PCHC on August 13, 2010 with reports of back pain, knee pain, anxiety, and depression (Tr. 259). He reported he had been stressed because his wife was ill, and he stated that his lack of sleep may have affected his back pain and ability to concentrate (Tr. 259). He was prescribed medication for pain and anxiety (Tr. 260). On September 13, 2010, Plaintiff reported back and knee pain, anxiety, depression, and stress as a result of his wife's illness (Tr. 257). Plaintiff was prescribed medication for pain and anxiety (Tr. 258).

On October 13, 2010, Plaintiff again presented with reports of back and knee pain, anxiety, depression, and stress as a result of his wife's illness (Tr. 254). He reported that going on the roof for business caused him back pain (Tr. 254). Plaintiff was prescribed medication for pain and anxiety (Tr. 255).

On November 12, 2010, Plaintiff presented with reports of back pain, anxiety, depression, and stress as a result of his wife's illness (Tr. 252). He stated he has back pain when he does things he should not do, like horseback riding (Tr. 252). Plaintiff was prescribed medication for pain and anxiety (Tr. 253).

### 4. Volunteer Behavioral Health Care

On May 19, 2011 and June 16, 2011, Plaintiff presented to Volunteer Behavioral Health Care where he was diagnosed with major depressive disorder, recurrent, severe without psychotic symptoms; bereavement; and alcohol abuse (Tr. 289, 295). He reported he was stressed "to the max," could not eat, sleep, or concentrate, and continuously replayed his wife's death (Tr. 292). Plaintiff reported that he binge drinks on weekends, but does not drink around children, which the doctor noted showed Plaintiff exercising some judgment (Tr. 288, 292, 294). He reported he was not suicidal (Tr. 288, 295). Plaintiff also reported he is "ok" when with family, but not when alone (Tr. 299). On May 19, 2011, his GAF score was recorded as 45 (Tr. 291). On June 16, 2011, his GAF score was recorded as 40 (Tr. 289).

### C. Hearing Testimony

Only the portion of the administrative hearing relevant to the parties' arguments will be addressed herein, but the Court has carefully reviewed the entire transcript of the hearing.

### 1. Plaintiff's Testimony

As relevant to Plaintiff's back disorder, Plaintiff stated that, on a scale of zero to ten, his average pain level is an eight (Tr. 40). He manages his pain by taking between 12 and 18 Tylenol or Aleve each day (Tr. 40). Plaintiff testified that in 2010, he climbed a roof to help supervise a roofer, but suffered intense back pain as a result (Tr. 44-45). He testified that he can no longer physically engage in similar supervisory activities because it requires him to climb ladders and walk on slanted roofs (Tr. 45-46). Plaintiff testified that he can walk without carrying weight for about 30 minutes, can lift about ten pounds, and has to shift in his chair while sitting every five to ten minutes and get up to walk about every 30 minutes (Tr. 39-40). He has been advised to go to a pain clinic, but has not gone because of the cost (Tr. 46).

6

As relevant to Plaintiff's mental impairments, Plaintiff testified he overdosed in 2010 (Tr. 41). He further testified that his nerves are "shot" after dealing with a divorce, the death of his wife, and a custody battle (Tr. 38). Plaintiff testified that his mental problems do not bother him until he is alone in his room at night and he has trouble sleeping, has nightmares, and has crying spells at night (Tr. 42, 46-47). Plaintiff received medication (Xanax) for his mental impairments and medication for insomnia (Tr. 41-42). He lives with his niece and primarily leaves the house only to buy cigarettes from the convenience store or visit his daughter (Tr. 43-44). Plaintiff does not like being around other people and does not trust other people (Tr. 42).

### 2. Vocational Expert's Testimony

The ALJ sought the testimony of vocational expert ("VE") Dr. Gary Sturgil (Tr. 49-53). The ALJ asked the VE to assume a person of the Plaintiff's age, education, and past work experience who could: stand, walk, and sit six out of eight hours in a workday; had frequent postural limitations; and was limited to a job involving only simple, routine, and repetitive tasks (Tr. 50-51). The VE testified that such a person could work as a building cleaner (with about 19,000 jobs in the state economy and 1,000,000 in the national economy), a housekeeper (with about 7,000 jobs in the state economy and 560,000 in the national economy), or a vehicle cleaner (with about 3,800 jobs in the state economy and 193,000 in the national economy) (Tr. 51). The ALJ then asked if the same jobs would be available if the limitation of only occasional public contact were added; the VE responded in the affirmative (Tr. 51-52). Plaintiff's attorney asked for the impact of the person having to take at least three 20-minute breaks per day, and the VE responded that this would likely preclude all work (Tr. 52). If the judge found all of Plaintiff's testimony to be credible, the VE stated this would preclude all work (Tr. 52). The VE also testified that all work would be precluded if the person needed to miss two or more days of work

per month (Tr. 52.)  Finally, all work would be precluded if the person continually could not sustain attention, concentration, and pace for up to one hour (Tr. 52).

## III.  ELIGIBILITY AND THE ALJ'S FINDINGS

### A.  Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work  but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).   The Social Security Administration determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

8

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.      The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 16, 2009, the amended onset date (Tr. 12).  At step two, the ALJ found Plaintiff had the following severe impairments: hypertension, anxiety, depression, alcohol abuse, and lumbar strain (Tr. 12).  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 13).  Specifically, the ALJ considered Listings 12.04 and 12.06 (Tr. 13-14).  The ALJ found Plaintiff had the RFC to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; frequently climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, bend, and crawl; understand, remember and carry out simple, routine, repetitive tasks; and have occasional interaction with the public (Tr. 14-17).  At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work (Tr. 17).  At step five, the ALJ noted Plaintiff is a younger individual, age 18-49, has a limited education, and is able to communicate in English (Tr. 17).  After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in

9

significant numbers in the national economy that Plaintiff could perform (Tr. 17-18). Based on the aforementioned findings, the ALJ determined Plaintiff had not been under a disability from October 31, 2007, the original alleged onset date, through November 10, 2011, the date of the decision (Tr. 18-19).

## IV.     ANALYSIS

As noted above, Plaintiff alleges the ALJ erred by: (1) minimizing Plaintiff's severe back disorder; (2) minimizing Plaintiff's severe mental impairments; (3) failing to properly evaluate and assess Plaintiff's credibility; (4) making RFC findings not consistent with the medical evidence; and (5) failing to include a function-by-function assessment. Plaintiff argues that the ALJ's alleged errors require reversal, or alternatively, remand. Each of Plaintiff's arguments will be addressed below.

### A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve

conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority are considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at

odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (concluding the ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (stating the ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010)).

## B. The ALJ Minimized Plaintiff's Severe Back Disorder

Plaintiff contends the ALJ erred by minimizing Plaintiff's severe back disorder. In support of this contention, Plaintiff cites medical records that state Plaintiff had been assessed with chronic back pain and diagnosed with low back pain and lumbar sprain. Absent from this claim of error, however, is any argument or legal ground justifying the ruling Plaintiff seeks from the Court. Defendant argues the ALJ did consider evidence regarding Plaintiff's back impairments and the effects of these impairments, but that the medical evidence and Plaintiff's daily activities undermined Plaintiff's subjective complaints.

Local Rule 7.1(b) requires all briefs to include "a concise statement of the factual and legal grounds which justify the ruling sought by the Court." E.D. Tenn. L.R. 7.1(b); *see also* Fed. R. Civ. P. 7(b) (requiring motions to "state with particularity the grounds for seeking the order"). As noted above, arguments not raised and supported in more than a perfunctory manner

are deemed waived. *Woods*, 2009 WL 3153153, at *7; *McPherson*, 125 F.3d at 995-96. Plaintiff does not provide any legal grounds, argument, or citation to any authority, case, or rule in support of this claim of error. Therefore, the portion of his brief that claims the ALJ erred by minimizing Plaintiff's severe back disorder is deemed waived.

Nevertheless, the ALJ did take into consideration that Plaintiff had been assessed with chronic back pain and diagnosed with low back pain and lumbar sprain and found Plaintiff had a severe impairment of lumbar strain (Tr. 12, 15-16). The ALJ described, at length, Plaintiff's recurrent appointments with various hospitals, reports of back pain, diagnoses of low back pain and lumbar sprain, and prescriptions for pain medication (Tr. 15-16). The ALJ also considered objective evidence inconsistent with Plaintiff's subjective complaints, such as normal range of motion, normal strength, normal alignment, and no swelling or deformity in the spine (Tr. 15-16). Additionally, the ALJ considered Plaintiff's statements that he was able to perform certain extensive activities, such as jumping on a pogo stick, climbing on a roof, and horseback riding (Tr. 16). Based on the inconsistencies between Plaintiff's statements and the record as a whole, the ALJ found Plaintiff's subjective statements not fully credible (Tr. 16).

As previously noted, if there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith*, 99 F.3d 780 at 782. Accordingly, I **FIND** the ALJ did not improperly minimize Plaintiff's severe back pain. Therefore, I **FIND** the ALJ's findings regarding Plaintiff's back pain are proper and supported by substantial evidence.

13

## C.    The ALJ Minimized Plaintiff's Severe Mental Impairments

Plaintiff asserts the ALJ erred in minimizing Plaintiff's severe mental impairments. Specifically, Plaintiff asserts the ALJ did not properly consider Plaintiff's Global Assessment of Functioning ("GAF") score in its decision. Plaintiff did not advance any further argument in support of this claim of error. Defendant contends Plaintiff did not seek mental health treatment until nearly a year after his amended onset date. Defendant further argues that Plaintiff's psychological impairment was not a long-term debilitating condition, but rather a mild to moderate condition exacerbated by unusually stressful situations. Defendant does not address Plaintiff's argument about his GAF scores.

A GAF "is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score of 41-50 indicates "'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Id*. at 503 (quoting DSM-IV-TR at 34). A score in the 41-50 range does not necessarily bear on a subject's social and occupational functioning, but rather only indicates that the assessor opined the subject had either serious symptoms *or* serious social, occupational, or school functioning. *Id*. at 511. Moreover, the ALJ is not required to consider a plaintiff's GAF score. The Commissioner has declined to endorse the use of GAF scores in Social Security programs, indicating that these scores have "no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citations omitted); *see also Kornecky*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score. . . .") (citations omitted); *Howard v. Comm'r of*

14

*Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (concluding the ALJ's failure to address plaintiff's GAF scores does not, in itself, make the RFC inaccurate).

Again, arguments not raised and supported in more than a perfunctory manner are deemed waived. *Woods*, 2009 WL 3153153, at *7; *see also* E.D. Tenn. L.R. 7.1(b); Fed. R. Civ. P. 7(b). Plaintiff repeatedly fails to provide legal grounds, argument, or citation to any authority, case, or rule in support of his broad claims of error. The portion of Plaintiff's brief that summarily claims the ALJ erred by minimizing Plaintiff's severe mental impairment is not in compliance with the applicable local and federal rules and is deemed waived.

Nevertheless, while the ALJ did not explicitly mention Plaintiff's GAF scores, the ALJ did address other evidence. For instance, the ALJ considered Plaintiff's admission to MTMC after his overdose, and his subsequent diagnoses of altered mental status, depression, major depressive disorder, anxiety, and alcohol abuse (Tr. 16). The ALJ also considered medical records that indicated Plaintiff's mental impairment was largely due to situational stressors, such as an altercation with his wife, the death of his wife, and a custody battle for his step-children (Tr. 16). Accordingly, I **CONCLUDE**, in light of the other evidence considered by the ALJ, that the ALJ did not err in failing to consider Plaintiff's GAF scores and I **FIND** the ALJ did not minimize Plaintiff's severe mental impairments. Therefore, I further **FIND** the ALJ's findings regarding Plaintiff's severe mental impairments are proper and supported by substantial evidence.

### D. The ALJ Failed to Properly Evaluate and Assess Plaintiff's Credibility

Plaintiff argues the ALJ erred by failing to properly assess and evaluate Plaintiff's credibility as required by SSR 96-7p, 1996 WL 374186 (July 2, 1996). Plaintiff quotes at length from this ruling and asserts that, while the ALJ noted he used the criteria from SSR 96-7p in

reaching his decision, it is "not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms." *Id*. at \*2. Plaintiff further argues the ALJ erred by focusing on a few of Plaintiff's activities of daily living while ignoring medical evidence showing Plaintiff is disabled. Plaintiff fails to assert, however, what medical evidence the ALJ ignored. Defendant contends the ALJ's credibility determinations were proper because Plaintiff failed to present objective medical evidence supporting the severity of Plaintiff's alleged symptoms and limitations, and that the medical evidence undermines these allegations. Defendant further asserts it was proper to consider Plaintiff's daily activities in order to contrast Plaintiff's allegations of disability.

An ALJ's credibility assessment is "virtually 'unchallengeable.'" *Ritchie*, 540 F. App'x at 511 (quoting *Payne*, 402 F. App'x at 112-13). Where there is an absence of sufficient objective medical evidence, the court will generally defer to the Commissioner's credibility assessment if it is supported by an adequate basis. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990)). If the ALJ finds contradictions among medical records, the claimant's testimony, and other evidence, it is appropriate for him to discount credibility to a certain degree. *Id.* For example, a claimant's subjective complaints of disabling pain may be undermined by objective findings of normal medical test results, as well as by daily activities such as walking, washing dishes, grocery shopping, dusting, laundry, and occasional driving. *Moses v. Comm'r of Soc. Sec.*, 402 F. App'x 43, 47 (6th Cir. 2010) (citing *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993)). While daily activities that are inconsistent with the claimant's complaints may be used to discount the claimant's credibility, a claimant's ability "to perform some household activities" intermittently "when his level of pain allows him to do so is not inconsistent with

[claimant's] claim that his pain prevents him from engaging in regular and continuous employment." *Meece v. Barnhart*, 192 F. App'x 456, 466 (6th Cir. 2006).

The ALJ considered Plaintiff's complaints of back pain, various diagnoses and prescriptions for pain medication (Tr. 15-16). In contrast to these subjective complaints, the ALJ considered Plaintiff's extensive activities of daily living, such as jumping on a pogo stick, climbing on a roof for business, and horseback riding (Tr. 16). The ALJ also considered objective medical evidence indicating normal range of motion, normal strength, normal alignment, and no swelling or deformity in the spine (Tr. 15-16). The ALJ further considered that, although Plaintiff was admitted to MTMC after an overdose and was diagnosed with various mental impairments, he did not seek medical treatment until May 2011, and his mental impairments were largely due to situational stressors (Tr. 16). Based on the inconsistencies between Plaintiff's allegations and the record as a whole, the ALJ found Plaintiff's statements not to be fully credible (Tr. 16). Accordingly, I **FIND** the ALJ's decision to discount Plaintiff's credibility was proper and supported by substantial evidence in the record.

### E. The ALJ's RFC Finding Is Not Consistent With the Medical Evidence

Plaintiff argues the ALJ's RFC finding is not consistent with the medical evidence. Plaintiff asserts the ALJ was "overly optimistic," failed to consider all of the probative evidence, and overlooked evidence that fully established Plaintiff's disability [Doc. 13 at Page ID # 358]. Plaintiff fails, however, to indicate what probative evidence the ALJ overlooked. Plaintiff further argues the ALJ erred by failing to send Plaintiff out to a consultative examining physician for a complete record, but he again fails to assert why this examination should have been required. Defendant counters that the ALJ did consider Plaintiff's subjective complaints, and the record as a whole undermines Plaintiff's allegations. Defendant further asserts the opinion of

state agency physician, Joe G. Allison, M.D., regarding Plaintiff's RFC was consistent with the examination findings in the record. Defendant, however, did not address Plaintiff's argument that the ALJ should have requested a consultative examination.

In making an RFC determination, the ALJ must consider all the relevant evidence in the record, including medical records, opinions of treating physicians, and the claimant's description of his limitations. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009) (citing 20. C.F.R. § 404.1545(a)(3)). A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833 (citations omitted). The evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner*, 745 F.2d at 388 (citations omitted).

Furthermore, although the regulations grant the ALJ the authority to order a consultative examination, they do not require the ALJ to do so. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.917(a)). The ALJ's duty to conduct a full inquiry "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Id.* (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). An ALJ may decide to order a consultative examination if the ALJ needs additional information to make a disability determination or to resolve a conflict or ambiguity in the evidence, but it is only needed to ensure there is sufficient information on the record to make a disability determination. *Correll v. Astrue*, No. 3:08-CV-280, 2009 WL 2601917, at *2 (E.D. Tenn. Aug. 24, 2009) (citing 20 C.F.R. §§ 416.919a, 416.919f).

While the ALJ considered Plaintiff's complaints of back pain, various diagnoses, and prescriptions for pain medication (Tr. 15-16), he also considered the absence of objective medical records indicating that Plaintiff's impairments were as debilitating as Plaintiff alleged (Tr. 15-16). Examining the record as a whole, the evidence does not fairly detract from the weight of the substantial evidence supporting the ALJ's findings, and Plaintiff has not demonstrated to the contrary. Accordingly, I **FIND** the ALJ's findings are consistent with the medical evidence.

Further, the ALJ based his disability determination on over two years' worth of Plaintiff's medical records dating back prior to Plaintiff's amended onset date (Tr. 15-16). These records contain detailed information on both Plaintiff's subjective complaints and his objective medical test results (Tr. 188-300). There is no indication in the record that the ALJ lacked sufficient information to make a disability determination such that a consultative examination would have been deemed necessary, and Plaintiff fails to point the Court to any such indication. Accordingly, I **FIND** the ALJ had sufficient information to make a disability determination, so he was not required to order a consultative examination. As the ALJ's findings were consistent with the medical evidence and the ALJ did not err in declining to order a consultative examination, I **FIND** the ALJ's RFC finding to be proper and supported by substantial evidence.

### F.       The ALJ Failed to Include a Function-by-Function Assessment

Plaintiff's final argument is that the ALJ erred by failing to include a function-by-function assessment in the RFC determination as required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff quotes from SSR 96-8p, which states, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and, for exertional capacity, "[e]ach function must be considered

separately….” *Id.* at *3, *5. Plaintiff asserts “it is clear that the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record” [Doc. 13 at Page ID # 359-60]. Aside from a perfunctory citation to SSR 96-8p, Plaintiff cites no case law or regulatory authority in support of his arguments. Defendant responds that the ALJ reviewed the evidence and adopted credible limitations of function supported by the evidence. Defendant also quotes from SSR 96-8p, which states, “[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.” SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). Defendant further asserts that Plaintiff states neither which limitations the ALJ failed to include nor which symptoms or medical evidence support them.

Although SSR 96-8p requires a function-by-function assessment in determining a plaintiff’s RFC, “case law does not require the ALJ to discuss those capacities for which no limitation is alleged.” *Delgado v. Comm’r of Soc. Sec.*, 30 F. App’x 542, 547 (6th Cir. 2002) (citations omitted). Further, “[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,” as there is a difference “between what an ALJ must consider and what an ALJ must discuss in a written opinion.” *Id.* at 547-48 (citations and internal quotation marks omitted). SSR 96-8p clearly states the ALJ must consider each function separately; it does not state the ALJ must discuss each function separately in the narrative of the ALJ’s decision. Moreover, a skeletal argument that the ALJ failed to include a function-by-function assessment, without any further argument, may deem the issue waived. *See Hicks v. Astrue*, No. 2:09-CV-161, 2010 WL 723796, at *4 (E.D. Tenn. Feb. 25,

2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (waiving the aforementioned issue because "[n]o opinion evidence is cited and no theories are advanced to support the argument that any of the [abilities the ALJ failed to individually discuss] are any different than what was found by the ALJ").

In the instant case, Plaintiff neither cites opinion evidence nor advances any legal theory to argue that Plaintiff's abilities are any different than those found by the ALJ. Plaintiff merely asserts a skeletal argument that the case should be remanded because the ALJ failed to include a function-by-function assessment. Therefore, this issue is waived. Nevertheless, the ALJ was not required to discuss each function separately in his decision, but rather only to consider each function. The ALJ does discuss Plaintiff's complaints regarding his limitations (Tr. 16). Before determining Plaintiff's RFC, the ALJ states he thoroughly reviewed the record, affording Plaintiff "the benefit of the doubt regarding his pain and mental limitations" (Tr. 16-17). Accordingly, I **FIND** the ALJ's properly considered each function separately as required by SSR 96-8p. As the ALJ sufficiently considered each function, I **FIND** the ALJ's RFC determination to be proper and supported by substantial evidence.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND**[1] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 14] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).